[Docket No. 15]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

TRUSTEES OF THE SHEET
METAL, AIR, RAIL,
TRANSPORTATION WORKERS
INTERNATIONAL
ASSOCIATION LOCAL 27
ANNUITY, HEALTH & WELFARE,
EDUCATION AND
SUPPPLEMENTAL
UNEMPLOYMENT FUNDS, et al.,

        Plaintiffs,

    v.

CINNAMINSON MECHANICAL
CONTRACTORS, INC.,

        Defendant.

Civil No. 22-6068 (RMB-MJS)

**OPINION**

**APPEARANCES**

Steven J. Bushinsky, Esq.
O'Brien, Belland & Bushinsky, LLC
509 S. Lenola Road, Building 6
Moorestown, New Jersey 08057

    *On behalf of Plaintiff*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court on the Second Motion for Default

Judgment, [Docket No. 15], filed by Plaintiffs Trustees of the Sheet Metal, Air, Rail,

Transportation Workers International Association Local 27 Annuity, Health &

Welfare, Education, and Unemployment Funds (the "Trustees"), and Sheet Metal, Air, Rail, Transportation Workers International Association Local Union 27 (the "Union") (collectively "Plaintiffs"), filed pursuant to FED. R. CIV. P. 55(b)(2).  For the reasons expressed below, Plaintiffs' motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Trustees are fiduciaries of the Sheet Metal, Air, Rail, Transportation Workers International Association Local 27 Annuity, Health & Welfare, Education, and Unemployment Funds (the "Funds") within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. § 1002(21)(A). The Funds represent trust funds established and maintained pursuant to section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), as well as multi-employer benefit funds established and maintained pursuant to sections 3(1), (2), and (3) of ERISA, 29 U.S.C. § 1002(1), (2) and (3), which provide benefits to eligible participants.  A collective bargaining agreement ("CBA") with the Union required Defendant Cinnaminson Mechanical Contractors, Inc. ("CMC" or "Defendant") to make timely contributions to the Funds on behalf of eligible beneficiary employees.  [Docket No. 1 ("Compl.") ¶ 17.]

On October 13, 2022, Plaintiffs filed their Complaint against CMC, alleging its (i) failure to remit contributions due under the CBA for July 12, 2021, and the period spanning October 16, 2021, through December 4, 2021, in violation of Section 515 of ERISA, 29 U.S.C. § 1145, [Compl. ¶¶ 1, 17–22]; and (ii) failure to remit dues check-offs for the same periods. [Compl. ¶ 26.]  On November 5, 2022, Plaintiffs filed an

2

executed Summons and Complaint averring that it served CMC's registered agent at his home vis-à-vis personal delivery on the registered agent's wife.  [Docket No. 5.] This Court found Plaintiffs' purported service of process was defective and granted Plaintiffs a ninety-day extension to effect proper service.  [Docket No. 11 (filed February 2, 2024).]

On March 6, 2024, Plaintiffs served the New Jersey Secretary of the Treasury as CMC's alternate agent for service of process.  [Docket No. 15-24, Return of Service.] Service occurred thirty-two days into the Court's ninety-day extension.  On April 4, 2024—more than twenty-one days after service on the Secretary—Plaintiffs requested an entry of default, [Docket No. 14], which the Clerk entered the next day.  Plaintiffs' Second Motion for Default Judgment followed on September 4, 2024.  [Docket No. 15.]  Plaintiffs seek unpaid benefit contributions, interest, liquidated damages, late fees, and attorney's fees totaling $39,920.82.  [Docket No. 15-2, Certification of Steven J. Bushinsky ("Bushinsky Cert.") ¶¶ 33, 39; Docket No. 15-27, Spreadsheet of Attorney's Fees and Expenses.]

Shortly after Plaintiffs requested default judgment a second time, this case was effectively stayed.  CMC filed for Chapter 11 Bankruptcy protection on September 9, 2024.  [Docket No. 16-1.]  The Court administratively terminated this action during the pendency of those proceedings.  [Docket No. 17.]  After the bankruptcy court dismissed CMC's bankruptcy petition, this Court re-opened Plaintiffs' action on November 19, 2025.  [Docket Nos. 18-19.]   With the bankruptcy proceedings

3

concluded and no appearance or response from CMC on the docket, Plaintiffs' motion is ripe for disposition.

## II.   LEGAL STANDARD

Courts may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action.   FED. R. CIV. P. 55(b)(2); *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)).   Although the Third Circuit prefers "that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984), district courts can and do grant default judgments where litigants fail to appear and engage with the litigation, *see, e.g.*, *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006) (upholding default judgment on appeal).   In assessing a motion for default judgment, courts accept all well-pleaded factual allegations as true—other than those regarding damages—but do not accept a plaintiff's legal conclusions.   *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Once the Clerk enters a default and a party moves for default judgment, the Court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Joe Hand Promotions, Inc. v.*

4

*Batra*, 2017 WL 838798, at *2 (D.N.J. March 2, 2017). Additionally, the following three factors guide whether a court should grant a default judgment: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III.   ANALYSIS

### A.   Jurisdiction and Service of Process

A district court must ascertain its jurisdiction over both the subject matter and the parties before entering a default judgment. *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015). This Court previously found it has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under ERISA, a federal statute. [Docket No. 11 at 4 (citing 29 U.S.C. § 1132(d)(1)).] CMC is a New Jersey corporation at home in this state, [Docket No. 15-14 at 2], subject to the Court's general personal jurisdiction, *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 441 (D.N.J. 2015).

But before a district court may exercise its jurisdiction, it must find Plaintiffs properly served CMC with process. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) (explaining that effective service of process is a prerequisite to exercising personal jurisdiction). The party asserting the validity of service bears the burden of proof by a preponderance of the evidence. *Grand Entertainment Group, Ltd. v. Star Media*

*Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993).  If service of process is valid, then so too is this Court's exercise of personal jurisdiction over CMC.

Plaintiffs' renewed efforts in March 2024 properly effected service of process on CMC.  Federal courts permit service of process using methods authorized by the law of the state in which the court sits.  FED. R. CIV. P. 4(e)(1).  When a corporation fails to properly maintain its registration with the state, New Jersey allows litigants to effect "substituted" service of process on the Secretary of the Treasury.  N.J. Rev. Stat. § 2A:15-30.1(b)(1); *see also Trs. of United Food & Com. Workers Union v. Union Org. for Soc. Servs.*, 2023 WL 3862039, at *3 (D.N.J. June 6, 2023) (finding service of process appropriate under § 2A:15-30.1, but untimely effected).  Here, Plaintiffs served the Secretary of the Treasury five months after CMC's corporate registration lapsed[1] ***and*** within the ninety-day extension for service this Court authorized.  Service of process— and personal jurisdiction in this Court—are proper.

### B. Legitimate Causes of Action

Accepting the complaint's factual allegations as true, *Polidoro*, 675 F. App'x at 190, Plaintiffs plead viable ERISA and breach of contract claims against CMC.  ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

---

[1] New Jersey suspended Defendant's corporate registration on October 16, 2023, [Docket No. 15-14, New Jersey Business Entity Report, at 2], and Plaintiffs effected service on March 6, 2024, [Docket No. 15-24, Return of Service].

contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If an employer fails to contribute to an employee benefit plan as required by a CBA, ERISA allows plan participants, beneficiaries, and fiduciaries to bring a civil enforcement action against the employer. *Id.* § 1132(a). ERISA allows those plaintiffs to recover unpaid contributions, interest, liquidated damages, reasonable attorney's fees, costs, and such other relief as the Court deems appropriate. *Id.* § 1132(g)(2). Turning to state contract law, an aggrieved contracting party may recover for breach of contract if the party establishes: (1) the existence of a valid contract; (2) performance by the non-breaching party; (3) defendant breached the agreement; and (4) damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).

Plaintiffs allege CMC agreed to abide by the CBA by employing Union workers. [Compl. ¶¶ 16-17.] Under the CBA, CMC agreed to, among other things, contribute fringe benefits to the Funds and pay the Union dues check-offs. [*Id.* ¶¶ 17-22; Docket No. 15-4 Art. XXXIII § 4 ("The undersigned recognizes the above names as established Union fringe benefit funds and agrees to be bound by the Agreement and Declaration of Trust and the established rules and regulations for each named fund and to remit payment when due[.]").]

Plaintiffs claim CMC failed to make the contractually required fringe contributions from October 16, 2021, through December 4, 2021, as well as July 12, 2021, and never paid the Union any dues check-offs. [Compl. ¶¶ 18, 26.] District courts in the Third Circuit—including this one—repeatedly find similar allegations state viable claims. *See, e.g.*, *Trs. of Int'l Union of Painters & Allied Trades Dist. Council*

7

*711 Health & Welfare Fund v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 443–44 (D.N.J. 2024) (Bumb, C.J.) (finding plaintiff pled a legitimate claim under ERISA based on nearly identical factual allegations); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Eagle Indus. Painting, LLC*, 2022 WL 5169532, at *3 (D.N.J. Oct. 4, 2022) (Hillman, J.) (same); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt., LLC*, 2022 WL 5169532, at *3 (D.N.J. Apr. 7, 2020) (Hayden, J.) (same). Plaintiffs thus plead viable ERISA and breach of contract claims.

## C. *Chamberlain* Factors

The *Chamberlain* factors support entering default judgment. First, Plaintiffs would suffer prejudice without a default judgment because it is the only avenue to vindicate their contractual and statutory rights. *See Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant."). Indeed, "because delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries, Plaintiffs would be prejudiced if default judgment was not entered in their favor." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Cape Sign Serv., Inc.*, 2021 WL 5564238, at *3 (D.N.J. Nov. 29, 2021) (citation modified); *see also Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. J.B.J. Mgmt. LLC,* 2021 WL 1660862, at *3 (D.N.J. Apr. 27, 2021).

8

Second, CMC does not present a meritorious defense because they failed to appear in this action or respond to Plaintiffs' Complaint.  Given CMC's failures, the Court "cannot [and need not] consider any defenses" before issuing default judgment. *J.B.J. Mgmt.*, 2021 WL 1660862, at *3; *see also Eagle Indus. Painting*, 2022 WL 5169532, at *3 ("Defendant has not presented a meritorious defense because it has not filed an answer or otherwise defended itself[.]"); *Peterson v. Boyarsky Corp.*, 2009 WL 983123, at *4 (D.N.J. Apr. 8, 2009) (finding court need not evaluate defenses if litigant fails to respond to complaint).

Third, the Court finds CMC is culpable in the default. Defendants are presumed culpable where they fail to answer, move, or otherwise respond to a lawsuit.  *Air Prods. Chems. Inc. v. Helium Plus, Inc.*, 2023 WL 6938213, at *2 (D.N.J. Oct. 20, 2023); *Cape Sign Serv.*, 2021 WL 5564238, at *3; *Sky High Mgmt.*, 2020 WL 1698784, at *3 ("The company's failure to respond 'demonstrates [its] culpability in its default,' and '[t]here is nothing before the Court to show that [its] failure to file an answer was a result of anything other than willful negligence.'") (alterations in original) (quoting *Teamsters Health & Welfare Fund of Phila. and Vicinity v. Dubin Paper*, 2012 WL 3018062, at *4 (D.N.J. Apr. 7, 2020)).

### D. Damages

Plaintiffs seek a judgment for $39,920.82.  [Bushinsky Cert. ¶ 39.]  ERISA allows Plaintiffs to recover:  (1) the full amount of unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the interest on the unpaid contributions or

9

liquidated damages; and (4) reasonable attorneys' fees and costs.    29 U.S.C. § 1132(g)(2).

Plaintiffs seek $10,609.12 from CMC for unpaid contributions from October 16, 2021, through December 4, 2021, as well as July 12, 2021.  [Bushinsky Cert. ¶ 30.] Plaintiffs support that amount with a spreadsheet from the Funds' administrator office listing payroll periods, contributions expected, and contributions received.  [Docket No. 15-25.]  CMC agreed to the CBA's Collection Policy, which sets the applicable interest rate on delinquent contributions at 2%.  [Docket No. 15-11 § E(3); *see also* Docket No. 15-4 Art. XXXIII § 5 (agreeing Trustees may set a collection policy).] Plaintiffs calculated interest due of $7,214.02.   [Bushinsky Cert. ¶ 33.]   Plaintiffs support the interest amount with spreadsheets calculating the interest per contribution period.  [Docket No. 15-26.]

The Collection Policy further allows for liquidated damages for failing to timely pay contributions, [Docket 15-11 § B(3)], as does ERISA, 29 U.S.C. § 1132(g)(2)(C). Liquidated damages under ERISA may be replaced by a *second* award of interest if the liquidated damages amount is less than the interest due on unpaid contributions.  *Id.*; *Trs. of the Int'l Union of Painters and Allied Trades Dist. Council 711 Health and Welfare Fund v. Brite-Painting & Decorating Co.*, 2020 WL 4593237, at 4 n.3 (D.N.J. Aug. 10, 2020) (citing *Trs. of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1023–24 (3d. Cir. 1988)).  Plaintiffs calculated liquidated damages of $2,121.82 (20% of the unpaid contributions), which is *less than* the accrued interest.  [Id. ¶ 9.]  Yet Plaintiffs claimed the liquidated damages amount, not the greater second interest award.

10

[Bushinsky Cert. ¶ 39.]  Faced with similar situations, this Court (and others) awarded plaintiffs the requested lesser amount.  *Brite-Painting & Decorating Co.*, 2020 WL 4593237, at *4 n.3; *see also, e.g.*, *Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, and Skill Improvement and Safety Funds v. Kel-Tech Constr. Inc.*, 2020 WL 6051097, at *7 n.1 (E.D.N.Y. Aug. 25, 2020) ("The requested [liquidated damages] amount of $210.56 is less than interest owed on delinquent ERISA contributions.  Although Plaintiffs would be entitled to the greater amount, they only request $210.56, and thus this Court recommends only $210.56 be granted."), *report and recommendation adopted without written opinion*.[2]  Plaintiffs are awarded their requested liquidated damages of $2,121.82.

Plaintiffs also seek to recover their attorneys' fees and costs.  [Bushinsky Cert. ¶ 39.]  Plaintiffs incurred $19,039.50 in attorneys' fees and $936.36 in costs.  [*Id.*; Docket No. 15-27, Spreadsheet of Attorney's Fees and Expenses.]  ERISA requires courts award reasonable attorneys' fees and costs in civil enforcement actions against employers for unpaid contributions.  29 U.S.C. § 1132(g)(2)(D).  To determine whether a request for attorneys' fees is reasonable under ERISA, courts perform the lodestar calculation by "determin[ing] the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate."  *United Auto Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007).  A party seeking

---

[2]  *See Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, and Skill Improvement and Safety Funds v. Kel-Tech Constr. Inc.*, No. 1:19-cv-2487 (E.D.N.Y. *default judgment entered* Oct. 15, 2020) (Docket No. 24).

attorneys' fees must provide "fairly definite information as to hours devoted to various general activities, *e.g.*, partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Id.* at 291 (quoting *Evans v. Port Auth.*, 273 F.3d 346, 361 (3d Cir. 2001)).

Plaintiffs had one attorney principally working on this matter (with two others billing minimal amounts) with three paralegals. The attorneys billed at $225 per hour and the paralegals $90 per hour. [Docket No. 15-27.] Although Plaintiffs did not provide documentation supporting the reasonableness of their rates, Courts have found similar hourly rates in similar matters were reasonable. *Cape Sign Serv.*, 2021 WL 5564238, at *4 ($175 for attorneys and $70 for paralegals reasonable five years ago); *J.B.J. Mgmt.*, 2021 WL 1660862, at *3 (same); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Independent Wallcovering, Inc.*, 2022 WL 4773694, at *3 (D.N.J. Oct. 3, 2022) (same rates as *Cape Sign Serv.* four years ago); *see also Connor v. Sedgwick Claims Mgmt. Servs, Inc.*, 2012 WL 608483, at *5 (D.N.J. Feb. 23, 2012) ($250 per hour a reasonable attorney rate in contested ERISA matter).

Plaintiffs also submitted an itemized statement detailing the work performed, and the time spent on each task. [Docket No. 15-27.] Counsel and staff's hours sit at the outer bounds of "reasonable" given the nature of the case and services rendered. The total number of hours spent on this matter is considerably higher than analogous cases. *Cf., e.g.*, *Sky High Mgmt.*, 2020 WL 1698784, at *4 (attorney's fees and costs totaling $4,673.11 for single motion for default judgment). Admittedly this case

required additional diligence to properly serve the New Jersey Secretary of Treasury and file a second motion for default judgment. However, the number of hours counsel and their paralegals spent (38.4 and 71 hours respectively) burgeon on excessive for determining service of process on the Secretary of the Treasury was appropriate, effecting that service, and preparing a second motion.

It is a close call, but given the detailed invoices provided, the substantive drafting and revisions reflected therein, and the detailed research performed, the Court finds Plaintiffs stayed on the right side of the line. And it appears, where possible, counsel enlisted paralegals to conduct research and prepare first drafts of documents to reduce costs. Plaintiffs' $936.36 in claimed costs are also reasonable and proportionate to Plaintiffs' repeated attempts to effect service. *See, e.g.*, *Independent Wallcovering*, 2022 WL 4773694, at *3 (finding $551 in costs reasonable). Thus, the Court awards Plaintiffs $19,975.86 for attorneys' fees and costs.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Second Motion for Default Judgment, [Docket No. 15], and enters judgment against CMC for $39,920.82 in unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs.

An accompanying Order of today's date shall issue.

**June 26, 2026**
Date

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

13